Guercio & Guercio LLP
ATTORNEYS AT LAW

**John Bradley**
*Attorney*
77 Conklin Street
Farmingdale, New York 11735
(516) 694-3000 x331

August 12, 2024

**VIA ECF**
Judge Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***Robert Jeffrey Johnson Jr. v. County of Nassau, et al.*, Case No. 2:23-cv-00167**

Dear Judge Reyes:

This letter serves as plaintiff's response to defendants' request for a pre-motion conference for the purpose of making a motion for summary judgment. A counter statement of undisputed facts pursuant to Rule 56.1 of the Federal Rules of Civil Procedure with exhibits is attached hereto. Defendants believe the following claims are subject to dismissal: (1) the claims asserted against the Nassau County Correctional Center and Nassau County Sheriff's Department on the grounds that they are non-suable entities; (2) the *Monell* claims against the County; (3) the negligent hiring, training, supervision, and retention claim against the County; (4) the conspiracy claim pursuant to 42 U.S.C. § 1985. Plaintiff provides the following response.

**Factual Background**

In the days leading up to the October 12, 2021 incident, plaintiff, an African-American male, alleges that his fellow inmates were smoking on the tier, which angered the correction officers. However, the correction officers could not identify the perpetrators. Individual defendants, correction officers Benson and Staib, yelled racial slurs at plaintiff and told him that they were going to find whoever was smoking. Plaintiff believed that the correction officers were targeting plaintiff.

The Nassau County Correctional Center prohibits inmates from smoking. If an inmate is caught smoking or with smoking paraphernalia, the inmate is written on disciplinary charges. He is then locked in his cell pending a disciplinary hearing where discipline on the inmate may be imposed.

On the date of the incident, the individual defendants, Officers Benson, Staib, Hussey, and Minervini, as well as Corporal McCaffrey, took plaintiff out of his cell and brought him to the lockbox area (an area away from other inmates). The officers then beat plaintiff, yelled racial slurs at him, grabbed his buttocks and genitals, and McCaffrey took his finger and inserted it in plaintiff's anus. Officer Villatoro kept watch in the lobby area of the tier to ensure that no one would witness the

assault. Less than two hours after the incident, the officers transferred most of the inmates on plaintiff's tier, including plaintiff, and dispersed them throughout other parts of the jail.

The individual defendants deny assaulting plaintiff. However, none of them have a recollection of October 12, 2021. Corporal McCaffrey wrote in his logbook that, at the time plaintiff claims he was assaulted, plaintiff was seen by medical staff due to complaints of chest pains. However, records from the medical unit show no such treatment. In addition, although required by policy, McCaffrey failed to document in the main logbook the name and badge number of the staff member from the medical unit that allegedly treated plaintiff.

Plaintiff made a complaint to the Sheriff's Department internal affairs bureau the next day. The investigator took pictures of the plaintiff's large black eye and interviewed plaintiff, as well as Benson and McCaffrey. However, the investigator failed to interview all officers assigned to the tier on the day of the assault and failed to interview any inmates or medical staff. In addition, the investigator failed to request or review the logbook to determine whether plaintiff was seen for chest pains as claimed by the officers. As a result of the incomplete investigation, the charges against McCaffrey and Benson were unsubstantiated. During discovery, plaintiff produced an inmate witness that corroborates plaintiff's version of the incident thereby discrediting defendants' denials.

**1. The Evidence Supports Plaintiff's 42 U.S.C. § 1985 Conspiracy Claim**

Contrary to defendants' argument, although the individual defendants are employed by the same agency, the intra-corporate conspiracy doctrine does not bar plaintiff's 42 U.S.C. § 1985 conspiracy claim as the personal stake exception applies. According to the exception, the intra-corporate conspiracy doctrine does not bar a conspiracy claim against "individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of Educ. of the City of N.Y.*, No. 97–CV–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). For the exception to apply, "plaintiff must also allege that [defendants] acted other than in the normal course of their corporate duties." *Girard v. 94th St. Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976).

The facts of this case are consistent with cases from the Second Circuit in which district courts found that the personal stake exception applied when law enforcement officers were alleged to have: covered up the use of excessive force (*see Hill v. City of New York*, No. 03 CV 1283, 2005 WL 3591719 (E.D.N.Y. Dec. 30, 2005)), assaulted a prisoner in retaliation for his participation in a federal lawsuit (*see Medina v. Hunt*, No. 05–CV–1460, 2008 WL 4426748, at *8 (N.D.N.Y. Sept. 25, 2008)), made a false report that plaintiff banged his head into the wall causing his own injuries (*see Ali v. Connick*, 136 F. Supp.3d 270 (E.D.N.Y. 2015).

Here, plaintiff alleges that, in days preceding the incident, the correction officers targeted plaintiff for smoking, as well as because of his race. The individual defendants pursued their personal interests wholly separate and apart from their employer (Nassau County Sheriff's Department) when they specifically targeted plaintiff for smoking, as well as because of his race, and disregarded NCCC's disciplinary rules by implementing the individual defendants' unauthorized rules of inmate discipline. The officers engaged in the following illegal and unauthorized acts: (1) yelled racial slurs at plaintiff; (2) conducted an illegal strip search of plaintiff; (3) physically and sexually assaulted plaintiff; (4) made false entries in the main logbook regarding the reason plaintiff was taken out of his cell.

In addition, contrary to defendants' argument, the agreement of the individual defendants' plan to impose their unwritten and illegal rules of discipline on plaintiff is evidenced by the following: (1) McCaffrey's false entries made in the logbook that plaintiff taken out of his cell and treated by the medical unit for chest pains at the time of the incident; (2) the transfer of any potential inmate witnesses to other parts of the jail to prevent plaintiff from recruiting witnesses. If plaintiff was seen by the medical unit, as alleged by the defendants, the medical unit is required to note the health encounter in plaintiff's medical file. There is nothing in plaintiff's medical file showing that such a health encounter took place. In addition, McCaffrey violated NCCC policy when he did not note in the main lobby logbook the name and badge number of the alleged individual from the medical unit that allegedly treatment plaintiff. This cover up was further carried out by the internal affair bureau when it conducted an intentionally biased investigation meant to confirm Benson and McCaffrey's story regarding what happened. Therefore, there is evidentiary support for plaintiff's claim that the individual defendants agreed to coverup the assault of plaintiff.

**2. Dismissal of the *Monell* Claims are Premature Because They Are Stayed**

Defendants' motion for summary judgment with respect to the *Monell* claims must be denied as premature. By Order dated February 27, 2023, the Hon. Brian M. Cogan severed Plaintiff's *Monell* claims and stayed them pending resolution of plaintiff's other claims. *See* ECF No. 18. In that regard, plaintiff was deprived of the right to conduct discovery regarding the *Monell* claim as it was stayed by the Court. As such, defendants' motion for summary judgment with respect to the *Monell* claim should be denied without prejudice with leave to refile a motion with respect to the claim following the resolution of plaintiff's other claims and after discovery is conducted regarding the *Monell* claim.

**3. The Negligent Hiring, Training, Supervision, or Retention Claim Should Survive**

The state law negligent hiring, training, supervision, or retention should survive as it cannot be said that the individual defendants were acting within the scope of employment. In addition, with respect to McCaffrey, the County knew or should have known that McCaffrey covered up assaults of prisoners in the past. Indeed, with respect to a prior incident, McCaffrey was found to have created a false report regarding an inmate assault and provided false an inaccurate information at an internal affairs interview. In addition, based on the conduct alleged by plaintiff (i.e., physical and sexual assault), it can hardly be said that the individual defendants were acting within the scope of employment.

**4. Claims Against Nassau County Correctional Center & Sheriff's Department**

Plaintiff concedes that the case law holds that Nassau County Correctional Center and the Sheriff's Department are departments of the County and not a separate legal entity to that of the County, and therefore, cannot be sued. *Gazzola v. Cnty. of Nassau*, 2022 WL 2274710, at *15 (E.D.N.Y. June 23, 2022); *Gleeson v. Cnty. of Nassau*, 2019 WL 4754326, at *14 (E.D.N.Y. Sept. 30, 2019).

Thank you for the Court's time and attention to this matter.

Respectfully submitted,

/s/John J. Bradley, Esq.
JOHN J. BRADLEY, ESQ.

/s/Christopher F. Mestecky, Esq.
CHRISTOPHER F. MESTECKY, ESQ.