In the matter between

SHERIFF OFFICERS ASSOCIATION

-and-

THE COUNTY OF NASSAU
Grievants: Patrick McCaffrey; Frank Poveromo
Grievances SR-29-10; SR 30-10

Before: Marlene A. Gold, Arbitrator
Appearances:

For the Union-Koehler and Isaacs LLP
By: Joey Jackson, Esq.
For the County-Nassau County Office of Labor Relations
By: Dan Schor, Esq., Director

The Arbitrator was designated by the parties to hear the above captioned matters and render a determination pursuant to the parties' collective bargaining agreement. Hearings were held on June 21 and July 24, 2012. Both parties had the opportunity to present and examine witnesses, submit documentary evidence, and argue their positions. The record was closed at the conclusion of the proceedings.

These disciplinary grievances challenge disciplinary action taken against two Nassau County Correction Officers ("Grievants") arising from an inmate's allegation of the use of excessive force against him by Correction Officer Poveromo on November 11, 2009. A November 5, 2010 Notice of Personnel Action ("NOPA") charged Officer Poveromo with violating Nassau County Sheriff Department ("Department") Rules and Regulations "when he kicked inmate in his right rear upper thigh causing injury. Additionally, on 1/15/10 Officer Proveromo suppressed information during an Internal Affairs interview regarding the inmate's

complaint. Failure to report a use of force and unnecessary force." A November 5, 2010 NOPA filed against Officer Patrick McCaffrey charged that on January 15, 2010 Officer McCaffrey violated Department Rules and Regulations by "providing inaccurate and/incomplete information during an Internal Affairs interview regarding an inmate complaint and failed to report a use of force." The Grievances were consolidated by agreement of the parties.

The parties have stipulated that the issue before the Arbitrator is as follows:

Are the Grievants guilty of the misconduct alleged in the November 5, 2010 NOPA. If so, what shall be the appropriate penalty?

## BACKGROUND

Inmate R.S. made a written complaint alleging that on November 11, 2009 a Correction Officer used excessive force against him. The inmate's complaint reads as follows:

"I was going to the bubble to ask the correction officer if I had mail and he became violent and proceeded to kick me in the back of my leg and my knee was surgically repaired and he won't let me seek medical attention and refuses to give me a grievance. The correction officer will not give me any information but today is November 11, 2009 at 7:45 pm." In addition, Inmate R.S. contacted the office of the Nassau County District Attorney and left a message regarding the allegation of use of excessive force against him. Thereafter, the Department commenced an investigation of the complaint. On November 12, 2009, investigators from the Department's Internal Affairs Unit ("IAU) obtained a written statement from Inmate R.S. That statement reads, "On 11/11/09, at about 7:45 pm, I was in my housing unit B01-C. I asked C/O "P" who is heavy set and has grayish curly hair, if I had any mail. He got pissed off and told me to get out of here. I turned to leave and he kicked me in the right rear thigh area just below my buttocks. The pain

was a 6-7. There were a bunch of inmates by the TV who saw what happened, because I heard them say "Oh shit." I asked Mr. "P" if I could go to medical and for a grievance form, and he said no." As part of the investigation, a medical examination of the inmate was conducted, photographs were taken of a bruise on his right thigh, staff was interviewed and a canvas of the inmate's housing area was conducted for potential eyewitnesses.

At the instant arbitration, the County presented testimony from the two IAU Investigators who conducted the investigation. Robert Pierce was the lead investigator. Investigator Daryl Henderson assisted in the investigation. Both investigators participated in the interviews of inmates assigned to the housing area. Their testimony was that during the investigation, it was confirmed that both Grievants were working in the vicinity of the alleged incident on the date and time in question. Further, Inmate R.S. indentified Officer Poveromo as the officer who kicked him. Based upon Investigator Pierce's belief that regular patrols in the housing are conducted on the half hour, Pierce concluded that because the incident did not occur during a regular patrol time, Officer McCaffrey should have observed the incident and generated the requisite report regarding the use of inappropriate force. The Grievants were questioned about the incident. Both provided statements denying any knowledge of such an incident.

Investigator Pierce testified that according to Inmate R.S.'s description of the incident, he was facing the housing area when he was kicked. As a result, the inmates in the housing area would have been facing the front of the inmate when the incident allegedly occurred. Pierce added that the inmate and officers would have been visible to the inmates in the housing area because there was nothing to obstruct the inmates' view of the site of the alleged incident. Pierce acknowledged that Inmate R.S. never mentioned where Officer McCaffrey was at the time

of the incident.

On cross-examination, Investigator Pierce acknowledged that the operational procedure for the housing unit required a patrol every fifteen minutes rather than every half hour. He further acknowledged that he had not checked the logbook to verify the times at which patrols were conducted relevant to the date and time in question.[1] Further, Investigator Henderson testified that he never learned precisely where Officer McCaffrey was during the alleged incident. With regard to those inmates who stated that they witnessed the incident, Investigator Pierce acknowledged that he had not checked the logbook to verify that those inmates were in fact in the housing area at the time nor did he inquire as to their vantage point for observing the incident.

Approximately 35 inmates assigned to the housing area were interviewed during the investigation. Each gave a very brief written statement. Seven of those interviewed professed to have witnessed the incident. Pierce estimated that he spent about 2 minutes with each of the inmates. Both investigators agreed that inmates other than the subject of the interview were in the vicinity at the time of the interviews and, although the investigators spoke in low tones, these inmates could have heard the questions and answers given. Investigator Henderson conceded that a better investigatory technique would have been to speak privately with each inmate. Investigator Pierce candidly admitted that when interviewing the inmates who stated that they witnessed the incident, he did not inquire in which direction the inmate witnesses were facing at the time, whether they were otherwise occupied, for example, watching television,[2] or question

[1] The Union subsequently submitted the November 11, 2009 sheet from the logbook that verifies that patrols were in fact conducted every fifteen minutes in that housing unit.
[2] The statement of Inmate R.S. is that "There were a bunch of inmates by the TV who saw what happened because I heard them say, "Oh, shit." However, the investigators did not identify where the TV was located in the housing area and whether inmates watching television at the time the incident allegedly occurred would have been in a position to observe events in the area of the officers.

the nature of their relationship with Inmate R.S. Investigator Henderson agreed that it would have been important to ascertain the relationship between the witness inmate and Inmate R.S. as it is relevant to the possibility of collusion between the two. In this regard, Henderson conceded that he did not check to determine whether inmate witnesses worked together with Inmate R.S. Investigator Henderson also acknowledged that when interviewing those inmates who claimed to have seen the incident, he did not pinpoint their location in the dorm area at the time of the incident. Finally, Investigator Pierce agreed that one inmate statement specifically noted the presence of a nurse at the time, but Pierce did not follow up by identifying and interviewing that staff member. With regard to interviewing the nurse, Investigator Henderson conceded that he could have followed up by interviewing the nurse. He explained that he did not do this because he was not the lead investigator.

The January 19, 2010 IAU Case Narration in this matter, prepared by Investigator Pierce, sustained the charge made by Inmate R.S. The Case Narration states that the Investigators' determination to sustain the charges was based upon the following: medical evidence and photos of a bruise on Inmate R.S.'s right rear upper thigh; the inmate statements that they observed Officer Poveromo kick inmate R.S; and the statement of an additional inmate that he did not see Officer Poveromo kick inmate R.S. but heard him yell, "ouch."

At the conclusion of testimony at this hearing, the County asked the Arbitrator to view the housing area in question. The Arbitrator granted the request and in the presence of both counsel and the Grievants, conducted a site visit. During the site visit, the Arbitrator confirmed that it would have been possible for inmates in the housing area at the time of the alleged incident to observe it, provided that the inmate was positioned facing the corner of the housing area where

the alleged incident was taking place, that their attention was not focused elsewhere, and that they were close enough to the corridor leading in and out of the housing area to observe what was taking place there.

## POSITIONS OF THE PARTIES

The County

The County maintains that it has met its burden of proof to establish that each Grievant engaged in the misconduct charged. Therefore, the charges contained within the NOPA must be sustained. Here, the evidence makes clear that something happened to Inmate R.S. that evening and the logical conclusion based upon evidence compiled during the investigation is that Officer Poveromo used inappropriate force and that Officer McCaffrey failed in his obligation to report it. The County emphasizes that a finding that the investigation could have been conducted more effectively does not compel a finding that there is insufficient evidence of the misconduct charged.

In urging the Arbitrator to credit the statements given to investigators by inmates, the County points out that many inmates were candid in saying that they did not witness the incident. To rebut any inference that the inmates who stated they had witnessed the incident were colluding in their statement, the County notes that there are small, insignificant inconsistencies in the statements (such as whether the inmate was kicked in the upper thigh or buttock) that mitigate against a finding of collusion. Moreover, as short-term inmates are housed in that area, the inmates do not have a motive to lie. Further, the record evidence does not establish that the inmates had such a motive.

The County notes that the layout of the housing area is designed so that officers assigned

there have an unobstructed view of the entire housing area. Based upon this, it argues that this means that the inmates housed there would have an unobstructed view of the officers. In addition, the County asserts that the site visit demonstrates that nothing obstructs the inmates' view of the officers assigned there.

Finally, in response to the Union's argument that the statements of Inmate R.S. and the inmate witnesses contain inconsistencies indicative of falsification, the County argues that the inconsistencies (such as those pertaining to the exact time of the incident) were insignificant and do not detract from the evidence that the misconduct in fact occurred. Based upon the foregoing, the County contends that the charges against the Grievant must be sustained.

The Union

The Union asserts that the County has failed to meet its burden of proof. The Union contends that the inconsistencies (as to the time and precise location of the incident) in Inmate R. S.'s statements detailing the alleged incident are evidence of fabrication. In addition, the statement by Inmate R. S. that a "bunch" of inmates were watching television at the time of the incident itself raises the question of whether inmates actually saw the incident. The Union further argues that the inconsistencies among the statements of inmates further diminish the credibility of the claim of use of inappropriate force.

The Union argues that the perfunctory manner in which the investigation was conducted requires a finding that the County has not met its burden to establish misconduct. For example, it contends that the fact that inmates who were potential witnesses were not asked where they were and what they were doing at the time of the incident calls into question the inmates' assertion that they were eyewitnesses to the incident.

With regard to Officer McCaffrey, the Union contends that the logbook page for the date in question demonstrate that Officer McCaffrey was conducting patrols every fifteen minutes and not every half hour as the investigator believed. Given the frequency of the patrols, the denials by both officers charged that the incident occurred, and the paucity of evidence as to where McCaffrey was at the time of the alleged incident, the County has not met its burden to establish that Officer McCaffrey witnessed the use of inappropriate force and failed in his obligation to report. Based on the foregoing, the Union urges that the Arbitrator must find that the misconduct did not occur. It seeks the rescission of the disciplinary penalty imposed upon each Grievant so that the Grievants are made whole.

**OPINION**

In a disciplinary matter, the burden of proof to establish the misconduct charged lies with the employer; therefore, it is the employer's obligation to prove that the Grievant engaged in the misconduct alleged in the NOPAs. Here, Inmate S.R. made a complaint of inappropriate force used against him within a reasonable time after the alleged incident. A medical exam and photographs taken during the investigation established that Inmate S.R. had a bruise on his upper right thigh. There is therefore no doubt that Inmate S.R. sustained an injury. Thus, the question is whether the County has satisfied its burden, first to establish that the injury was caused by Officer Pomovero kicking Inmate S.R. as alleged and second, that Officer McCaffrey witnessed but failed to report the incident as required, misconduct which both officers denied in their statements.

As discussed herein, after a review of the record evidence, the Arbitrator finds that the County has not met its burden with regard to the charges against the two officers. In making this finding, the Arbitrator agrees with the County that a determination that an investigation is not as

comprehensive as it could be does not preclude a finding that the employer has met its burden of proof. Here, however, there was no direct testimony from either the alleged victim or purported eyewitnesses. This circumstance, combined with shortcomings in the investigation preventing the Arbitrator from assessing the reliability of the written statements of Inmate R.S. and other inmates, compels a finding that the County has not met its burden.

Because Inmate R.S. did not testify, he could not be questioned as to the veracity of his complaint. Nor could Inmate R.S. be examined as to whether he had any bias against Officer Poveromo or whether he had a motive to lie when he made the complaint. Given that the reliability of Inmate S.R.'s accusation that a kick by Officer Poveromo was the cause of his bruise cannot be ascertained based on his previous written statement alone, the Arbitrator considered the evidence gathered during the investigation to determine whether it provides support sufficient to satisfy the County's burden of proof. The Arbitrator finds that it does not. The investigation reflects that the sole source of support for the inmate's accusation are the written statements of seven inmates claiming that they saw Officer Poveromo kick Inmate S.R. and the statement of an additional inmate who reported that he heard Inmate R.S. say "ouch" and was then told by Inmate R.S. that Poveromo had kicked him. Of the seven inmates, only two identified their location in the housing area (at "the table"; "on my bunk") but there is no evidence that either investigator determined whether this provided a vantage point from which they could see the incident. Neither investigator testified that he inquired of the other purported eyewitnesses specifically where they were inside the housing area and what they were doing at the time of their alleged observation of the incident. Moreover, the investigators acknowledged that they did not attempt to check Department records to verify that the alleged eyewitnesses were actually in the housing area at the

time of the incident.

The lack of any inquiry by the investigators to corroborate the inmates' unsworn statements is of great concern for a number of reasons. First, Inmate R.S. wrote in his complaint that "there were a bunch of inmates by the TV who saw what happened because I heard them say, "Oh, shit." By the inmate's own account then, the unnamed inmates who he believes were eyewitnesses were presumably watching television at the time. Whether they were otherwise occupied or had a direct line of vision to where Officer Poveromo was positioned was not established.[3] Second, several of the inmates in the housing area questioned by investigators stated that they did not witness the incident but that they had heard Inmate R. S. talking about the alleged incident. This raises the possibility that inmates in the housing area who purported to be eyewitnesses merely heard about the alleged complaint, but claimed to have witnessed it. However, due to the absence of any eyewitness testimony, counsel could not explore this possibility. Third, both investigators acknowledged that because the interviews of the inmates were not conducted in private, it is possible that inmates were able to hear the questions and answers given by their fellow inmates being interviewed. This is problematic, as acknowledged by one of the investigators. Fourth, as the Union correctly points out, there were certain inconsistencies among the statements given by Inmate R.S. and the statements of the alleged eyewitnesses. While, as the County asserts, these inconsistencies appear to be of a minor nature, without a more complete investigation or an opportunity to test the accuracy of the statements,

[3] At the time of the Arbitrator's site visit to the housing area, the television was mounted at a corner of the housing area such that inmates watching the television would be facing away from the officers' area. Because the County correctly points out that the television could have been situated elsewhere in the housing area at the time of the incident, the Arbitrator does not consider its location during the site visit to be probative. However, the Arbitrator notes that investigators

there appears to be no means to assess their reliability.

Finally, the Arbitrator notes that one of the eyewitness inmates, upon whom the investigators based their conclusion that Inmate R.S.'s complaint was sustained, stated that "medication" i.e., a nurse, was present at the time of the incident. The investigators acknowledged that they did not attempt to identify and speak with that nurse, who presumably would have been an unbiased witness who could have testified at the instant arbitration.

Based upon the foregoing the Arbitrator is constrained to find that the County did not establish that Officer Poveromo engaged in the misconduct charged. The same is true in the case of the charges against Officer McCaffrey. First, because the evidence is not sufficient to establish that Officer Poveromo kicked Inmate R.S. as charged, it follows that there cannot be sufficient evidence that Officer McCaffrey witnessed it and failed to report it. Moreover, had there been sufficient reliable evidence against Officer Poveromo, the evidence failed to establish precisely where Officer McCaffrey was at the exact time of the alleged incident.

---

failed to specify the location of the television on the date in question.

## AWARD

Based upon the foregoing, the grievances are sustained. Officer Poveromo is not guilty of the misconduct charged in the November 5, 2010 NOPA. Officer McCaffrey is not guilty of the misconduct charged in the November 5, 2010 NOPA. Both officers will have all penalties stemming from these charges rescinded and be reimbursed for wages lost during any suspension they served. In addition, all references to the charges in the November 5, 2010 NOPAs will be redacted from the Grievants' personnel files.

DATED: Brooklyn, New York
October 15, 2012

**MARLENE A. GOLD**

State of New York}
County of Kings}

The undersigned, under penalty of perjury, affirms that she is the Arbitrator in the within proceeding and signed same in accordance with arbitration laws of the State of New York.

**MARLENE A. GOLD**