# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

№ 2:23-CV-00167 (RER) (JMW)

————————————

ROBERT JEFFREY JOHNSON, JR.

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, CORPORAL PATRICK MCCAFFREY, OFFICER THOMAS BENSON, OFFICER JAMES STAIB, OFFICER DYLAN HUSSEY, OFFICER ANTHONY MINERVINI, AND OFFICER JOSE VILLATORO

————————————

**MEMORANDUM & ORDER**

————————————

**RAMÓN E. REYES, JR., District Judge:**

Plaintiff Robert Jeffrey Johnson, Jr. brings this civil rights action against the County of Nassau, Nassau County Correctional Center, Nassau County Sheriff's Department, Corporal Patrick McCaffrey, Officer Thomas Benson, Officer James Staib, Officer Dylan Hussey, Officer Anthony Minervini, and Officer Jose Villatoro, alleging (1) excessive use of force, unlawful search, and Eighth Amendment violation under 42 U.S.C. § 1983; (2) failure to intervene under 42 U.S.C. § 1983 and § 1986; (3) conspiracy under 42 U.S.C. § 1985; (4) race discrimination in violation of 42 U.S.C. § 1981; (5) assault; (6) negligent hiring, training, supervision, and retention as against the County; and (7) *Monell* claims. Defendants move for partial summary judgment on two claims: the section 1985 conspiracy, and negligent hiring, training, supervision, and retention as against the County.

After carefully reviewing the record, and for the reasons set forth herein, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## **BACKGROUND**[1]

I.      Factual Background

On October 4, 2021, plaintiff Robert Jeffrey Johnson, Jr.  ("Plaintiff" or "Johnson"), an African American man, was incarcerated in section "B2" at the Nassau County Correctional Center, of which defendants Corporal Patrick McCaffrey, Officer Thomas Benson, Officer James Staib, Officer "John" Stussey (together, "Officer Defendants") are employees (Correctional Center and Officer Defendants collectively, "Defendants"). (ECF No. 63-1 ("Pl.'s 56.1") ¶¶ 11, 12.1). He alleges Officer Defendants brutally beat and sexually assaulted him during an incident at the prison. (ECF No. 41 ("Am. Compl.") ¶ 33).

According to Johnson, in the days prior to the incident, Officer Benson and Staib smelled smoke on the tier and subsequently told him and other incarcerated residents to stop smoking. (Pl.'s 56.1 ¶ 12.34). The officers were angry that residents were smoking (which is prohibited by the resident conduct rules) and stripped them of various privileges, including the ability to use the phone or take a shower. (Pl.'s 56.1 ¶¶ 12.18–12.19; 12.33; Am. Compl. ¶ 34). Johnson also alleges that, along with telling him to stop smoking, Officer Benson called him a "nigger" and a "faggot" on several occasions, although he does not specify when this occurred. (Am. Compl. ¶ 34).

---

[1] The Court acknowledges and offers its deep gratitude to Ava Zhang, a judicial intern and second year law student at Brooklyn Law School, for her assistance in researching and drafting this memorandum and order.

Johnson claims that on October 12, 2021, around 3:30 P.M., Officer Defendants handcuffed him and escorted him to the lockbox area (Pl.'s 56.1 ¶ 12.38; Am. Compl. ¶ 40; ECF No. 63 ("Opp'n") at 2). They directed him to face the wall and called him those same slurs along with other derogatory terms. (Pl.'s 56.1 ¶ 12.38; Am. Compl. ¶ 40). An unidentified officer then told Johnson to turn around, and Corporal McCaffrey punched Johnson on the left side of his face. *Id*. Johnson fell to the floor, Officer Defendants then pinned him down, punched, kicked, spat on him, and directed slurs at him. *Id*.

Plaintiff alleges that Officer Defendants then held his legs down and pulled down his pants. (Pl.'s 56.1 ¶ 12.39; Am. Compl. ¶¶ 38–39). He further alleges that Corporal McCaffrey then said, "take this you fucking nigger" and penetrated Johnson's anus with his finger. (Pl.'s 56.1 ¶ 12.39). Plaintiff began struggling and screaming his mother's phone number in hopes another resident would hear him and dial his mother. *Id*. He then heard correction officers tell residents to get back in their cells, and officers then brought Johnson back to his cell. *Id*. Johnson estimates that the entire incident lasted at least one minute. *Id*.

Though officers are directed to record any prison resident injuries in the main lobby logbook (*Id*. ¶ 12.5), no use of force report was ever created for this incident (*Id*. ¶ 12.40). Another B2 resident, Clifton Woods ("Woods"), testified that he heard a commotion coming from the lockbox area that sounded like a resident was being beaten. (*Id*. ¶ 12.47). He then looked through the window of the door to the tier and saw four correctional officers. Woods attests he did not witness the assault but heard an officer call Johnson a "nigger" and also heard Johnson's cries for help amidst a struggle. (*Id*.)

Following the incident, Johnson was transferred to another area known as "E2B." (*Id*. ¶ 12.41). While in E2B, Plaintiff filed a sick call request, citing chest pains, shortness of breath, headache, and a swollen face. (*Id*. ¶ 12.42). Johnson's sick call request was received but characterized as a non-emergency, meaning he would be seen by medical staff the following day. (*Id*.) On October 13, 2021, around 3:07 P.M., Johnson was taken to the medical unit, where an investigator noted a bruise on his left eye. (*Id*. ¶ 12.44). Nurse Practitioner Wanda Evelyn testified that she responded to the sick call request around 3:18 P.M. (*Id*.) She diagnosed Johnson as being a victim of sexual assault and recommended transfer to Nassau University Medical Center. *Id*.

Johnson was admitted to the medical center for treatment around 4:21 A.M. (*Id*. ¶ 12.44). Although he complained to staff that he had been physically and sexually assaulted by correction officers, he asserts medical staff did not perform a rape kit. (*Id*. ¶ 12.55). Additionally, though he allegedly received treatment, Dr. Donna Henig, the medical director of the prison's medical unit, testified that she reviewed Johnson's medical record and found no documentation that he was ever treated by medical staff. (*Id*. ¶¶ 12.66–12.67).

Officer Defendants deny that the incident ever occurred or that they ever assaulted Plaintiff. (ECF No. 42 ("Ans.") at 3). They further claim that while Johnson may have been taken out of his cell on October 12, 2021, it was for a medical examination consistent with Corporal McCaffrey's entries in the logbook (*id*.), and that these entries were in accordance with Officer Rules and Procedures on the alleged date of the incident. (ECF No. 62 ("Def. Mem.") at 3).

4

Defendants' 56.1 Statement includes various recitations from the Nassau County Sheriff's Department Division of Correction Rules and Procedures, which set forth the "use of force" policies and procedures for correctional officers ("Officer Rules and Procedures"). (Defs.' 56.1 ¶¶ 1–5). The policy prohibits discriminatory treatment of residents on the basis of protected characteristics, including race, religion, and sexual orientation. (*Id.* ¶ 8). The Officer Rules and Procedures also declares that for every resident who sustains an injury, officers must properly record documentation of the injury, medical treatment, and investigation of the injury on the Injury to Inmate Report. (*Id*. ¶ 2).

Relatedly, Johnson references prior instances of disciplinary action against three of the Officer Defendants for violating Officer Rules and Procedures. In 2010, Investigator Pierce substantiated charges against Corporal McCaffrey for providing inaccurate or incomplete information during an Internal Affairs Review and failing to properly record a use of force report (Pl.'s 56.1 at 26–27). Corporal McCaffrey was found not guilty after arbitration. (*Id*.) Corporal McCaffrey was also disciplined in 2006 for using impermissible force on a resident, and in 2020 for failing to maintain proper logbook entries on B2. (*Id*.) Officer Benson received disciplinary action in 2013 for talking back to a supervisor, and Officer Hussey was demoted in 2023 for taking leave time to which he was not entitled. (*Id*. at 28).

II.    Procedural History

Plaintiff filed his initial complaint on January 10, 2023 (ECF No. 1). On January 18, 2024, the case was reassigned to the undersigned. (ECF entry dated 1/18/2024). Plaintiff's *Monell* claims were already severed and stayed pending resolution of Plaintiff's other claims. (Order by District Judge Brian M. Cogan dated 2/27/2023).  Plaintiff filed an

amended complaint on March 27, 2024 (Am. Compl.), and Defendants answered on April 19, 2024, (Ans.). On August 12, 2024, Plaintiff agreed to discontinue all claims against the Nassau County Correctional Center and Nassau County Sheriff's Department. (ECF No. 49 at 3). On May 19, 2025, Defendants filed their fully briefed motion for partial summary judgment, moving only as to Plaintiff's claims of conspiracy under section 1985 and negligent hiring, training, supervision, and retention against the County. (*See* ECF Nos. 61; 62 ("Mem."); 62-1 ("Def.'s 56.1"); 63 ("Opp'n"); 63-1 (Pl. 56.1); 64 ("Reply")).

## **LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, a district court must grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a); *Dupree v. Younger*, 598 U.S. 729, 731 (2023); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the court functions not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citations omitted). The burden lies with the moving party to show the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009). The district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (citing *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir. 1991); *see also Tolan v.*

6

*Cotton*, 572 U.S. 650, 651 (2014) (per curiam). If reasonable minds could differ as to the import of the evidence, however, a court should not grant summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986) (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)) (discussing the summary judgment standard).

## **DISCUSSION**

I.      Plaintiff's Section 1985 Conspiracy Claim Survives Summary Judgment

Johnson's claim under 42 U.S.C. § 1985(3)[2] is that Officer Defendants conspired to deprive him of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights by acting in concert to unlawfully beat and brutalize him and collectively cover up the beating by falsifying the medical logbook and denying the alleged mistreatment. (Am. Compl. ¶ 60–61). Defendants argue that summary judgment on these claims is warranted due to lack of evidentiary support and under the intra-corporate conspiracy doctrine. (Mem. at 10). The Court disagrees with respect to the allegation of conspiring to cover up the incident.

A plaintiff can sue for recovery under 42 U.S.C. § 1985(3) "if two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . ..". To sustain such a claim, a plaintiff must show: (1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy, and (5) injury. *Dolan v. Connolly*,

---

[2]Plaintiff's papers do not specify that he is making a claim under § 1985(3), but the alleged facts and arguments he offers do not suggest any other claim under § 1985. Defendants' papers also demonstrate an assumption the claim is limited to § 1985(3). (*See* Mem. at 10).

794 F.3d 290, 296 (2d Cir. 2015) (citing *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). The conspirators' actions must be motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Cheruvu v. HealthNow New York, Inc.*, No. 22-1993, 2023 WL 3443362, at *2 (2d Cir. May 15, 2023) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin*, 403 U.S. at 102.

A.      Existence of an Agreement to Form a Conspiracy

To maintain an action under section 1985, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir 2003) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000)). A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.1995)). Conclusory statements that defendants were motivated by animus do not provide sufficient factual basis. *See Vidurek v. Koskinen*, 789 Fed.Appx. 889, 894 (2d Cir. 2019) (affirming that plaintiff's assertions were conclusory and not entitled to the assumption of truth because plaintiff pleaded no facts as to defendant's actions being motivated by discriminatory animus). Additionally, parallel action, such as the collective and consistent denial of an incident, standing alone, is not sufficient circumstantial evidence to prove the existence of a conspiracy. *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 104 (2d Cir. 2018) (citation omitted).

8

Johnson fails to provide sufficient evidence—either direct or circumstantial—to demonstrate a genuine dispute of a material fact regarding a prior agreement by Officer Defendants to beat and brutalize him. But he does do so regarding an agreement to cover it up afterwards. Officer Defendants' alleged use of racial slurs prior to the incident serves only to satisfy discriminatory animus; it does not demonstrate a meeting of the minds to single out Johnson and assault him specifically due to racial bias. *See LeGrand v. Walmart Stores East, LP*, No. 16-CV-6974 (SJF) (ARL), 2017 WL 11711139 (E.D.N.Y. Dec. 20, 2017), *aff'd*, Fed.Appx.779, 783 (2d Cir. 2019) (holding that a plaintiff's section 1985 claim failed where she alleged her manager used racial slurs against her and other employees but did not allege facts regarding an unlawful agreement or meeting of the minds).

However, Officer Defendants, who were all deposed independently, notably denied any recollection of the incident, or ever escorting Johnson to the lockbox area. (Pl.'s Opp'n at 12). Officer Defendants not only denied assaulting Johnson or witnessing the assault but also "could not recall" if they were in the lockbox area at all during the alleged time of the incident. (*Id.* ¶ 12.64). While this parallel denial alone is not enough, *Anderson News, L.L.C.*, 899 F.3d at 104, testimony from Woods and Dr. Henig, along with other circumstantial evidence, are enough—even if barely—to imply a tacit agreement to cover up the incident. Woods testified that he heard a commotion that sounded like a beating and had seen multiple officers going into the lockbox area at the same time. (Pl.'s 56.1 ¶ 12.47). Dr. Henig testified that she reviewed Johnson's medical records and never saw a notation or medical record created for the incident (Pl.'s 56.1 ¶ 12.66; ECF No. 63-17 at 47 ("Henig Dep. Tr.")), despite the requirement that a record

9

be made for every instance of medical treatment provided to a prison resident. (Henig Dep. Tr. at 47; *see also* Defs.' 56.1 ¶ 2 (referencing the "Rules and Procedures")). Defendants are unable to explain Johnson's large bruise on his left eye, even though Investigator Pierce took photographs of the bruise (Pl.'s 56.1 ¶ 12.51), and Nurse Practitioner Evelyn noticed the bruise when she examined Johnson (*Id*. ¶ 12.44). A jury may rationally infer from the conflicting testimony and lack of consistent record-keeping that Officer Defendants participated in a conspiracy to cover up unlawful conduct in a manner that went beyond simply denying it in their depositions. *See Hill v. City of New York*, No. 03-CV-1283 (ARR), 2005 WL 3591719 at *5 (E.D.N.Y. Dec. 30, 2005) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997)) (partially denying summary judgment in consideration of circumstantial evidence supporting a malicious prosecution claim).

In this context, Johnson's claims that Defendants' actions were motivated by racial animus are limited to testimony. But those claims are specific and non-conclusory enough—even if barely so— to create a genuine dispute of material fact about the kind of racially motivated discrimination that section 1985 prohibits.

B.     Intra-Corporate Conspiracy Doctrine

Defendants assert that Plaintiff's claims should be dismissed pursuant to the intra-corporate conspiracy doctrine. (Mem. at 11). Under this doctrine, officers, agents, and employees of a single corporate entity are legally incapable of conspiring together. *Guichard v. Town of Brookhaven*, 26 F.Supp.3d 219, 227 (E.D.N.Y. 2014) (quoting *Quinn v. Nassau Cnty. Police Dep't*, 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999)) (citations omitted). Although the doctrine originated from cases involving corporations, numerous courts have

applied the doctrine to public entities. *Hill*, 2005 WL 3591719 at *5; *Silverman v. City of New York*, No. 98-CV-6277 (ILG) (CLP), 2001 WL 1776157, at *4 (E.D.N.Y. Nov. 19, 2001) (collecting cases). If this doctrine applies, Officer Defendants, as co-employees of a public entity, would be unable to form an agreement or conspiracy, defeating Johnson's claim.

Johnson argues this should be rejected because the personal stake exception to the intra-corporate conspiracy doctrine applies. (Opp'n at 21). This exception "applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of Educ. of City of N.Y.*, No. 97-CV-1337 (NG), 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999) (citation omitted). Correspondingly, whether the intra-corporate conspiracy doctrine applies depends on whether each and every Defendant was acting in furtherance of their employer's interests or motivated by a personal interest. *Quinn*, 53 F.Supp.2d at 360.

The Officer Rules and Procedures explicitly instruct that "documentation of [resident] injury, medical treatment, and the investigation of the injury will be properly recorded on the Injury to Inmate Report." (Defs.' 56.1 ¶ 2). Given the conflicting testimony, a question of fact remains as to whether a proper use of force report and medical report were recorded, and whether the inconsistent testimony or record-keeping suggests an agreement to cover up the alleged misconduct. If Officer Defendants did not properly record and report the incident, or falsified any report in connection with the incident, they would be directly circumventing the Officer Rules and Procedures. (*See id.*). Thus, when viewing the evidence in the light most favorable to Johnson, Officer Defendants acted in their own interest and outside the normal or appropriate course of their duties. *See Ali v.*

11

*Connick*, 136 F.Supp.3d 270, 283 (E.D.N.Y. 2015) (holding that the personal stake exception applied when police officers were alleged to conspire to cover up the use of excessive force); *see also Quinn*, 53 F.Supp.2d at 360 (finding that a police officer acted in a personal capacity by abusing a fellow police officer based on sexual orientation). Accordingly, Johnson has provided enough evidence to support the personal stake exception and overcome the intra-corporate conspiracy doctrine at this stage.

Accordingly, though Johnson does not present sufficient evidence of an agreement for any point *prior* to the incident, the circumstantial evidence could point to an agreement to cover up the unlawful conduct through inaccurate testimony or record-keeping. This is enough to demonstrate a genuine dispute of a material fact so that Johnson's section 1985 conspiracy claim survives summary judgment.

II.     Negligent Hiring, Training, Supervision, and Retention as against Nassau County

Johnson contends that Officer Defendants were acting contrary to policy and therefore outside the scope of their employment, and that the County knew or should have known of their propensity for excessive force based on past disciplinary incidents. (Opp'n at 22–26). Defendants argue that this claim cannot survive because Officer Defendants were acting within the scope of their employment and there is no evidence that the County knew or should have known that they would commit the alleged assault. (Mem. at 12–14).The Court agrees with Defendants as to what the County knew or should have known.

Under New York law, to state a claim for negligent supervision or retention, a plaintiff must show the standard elements of negligence (duty of care; breach of that duty; causation; and damages, *Du v. Party Perfect Rentals LLC*, 724 F. Supp. 3d 68, 73

12

(E.D.N.Y. 2024)), as well as (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations omitted). To sustain this claim, Johnson must show that Officer Defendants were acting outside the scope of their employment. *Velez v. City of New York*, 730 F.3d 128, 136–137 (2d Cir. 2013).

It is undisputed that Officer Defendants were employed by the County at the time of the incident, and that the alleged incident occurred within the County's premises. (Reply at 8). As correctional officers employed by the County, Officer Defendants owed Johnson, a resident of the correctional facility, a duty of reasonable care to protect him from foreseeable risks of harm. *Pizzuto v. Cnty. of Nassau*, 239 F.Supp.2d 301, 312 (E.D.N.Y. 2003) (quotation marks and citation omitted). However, Johnson fails to present evidence that the County knew or should have known that Officer Defendants had a propensity for the alleged discriminatory conduct at any point prior to the incident that caused his injury. *See Doe v. Guthrie Clinic, Ltd.*, 519 Fed.Appx. 719, 721 (2d Cir. 2013) (holding that a negligent hiring, training, retention and/or supervision claim failed because complaint did not allege that defendants' actions were reasonably foreseeable). The Officer Rules and Procedures certainly do not condone the use of excessive force or an attack like the one Johnson alleges (Pl.'s 56.1 ¶ 12.13), but Johnson's purported evidence regarding prior disciplinary incidents is unavailing. Corporal McCaffrey had two prior disciplinary actions involving excessive use of force towards a resident, but he was found

not guilty in both. (Pl.'s 56.1 at 26–27.) And although Investigator Pierce testified that he believes the arbitration decision may have been incorrect, Johnson's claims are limited to vague and conclusory allegations regarding the arbitration procedure, with no evidence that the decision was rendered improperly. *Id*. Johnson also references the disciplinary history of Officer Benson and Officer Hussey, but both were disciplined, and neither instance relates to excessive force or any violent behavior generally. *Id*.

Therefore, Plaintiff has presented insufficient evidence to prove that the County knew or should have known of any of the Officer Defendants' propensity for the alleged conduct. Accordingly, this claim does not survive summary judgment.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendants' motion for partial summary judgment. Plaintiff maintains his section 1985 third cause of action, while his eighth cause of action is dismissed. Plaintiff may proceed with his remaining claims.


SO ORDERED.


/s/ Ramón E. Reyes, Jr.
_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 24, 2026
        Brooklyn, NY

14